Good morning and welcome. My name is Bridget Beattie. I'm a circuit judge with my chambers in Phoenix, Arizona. Today I'm sitting with Judge Richard Pius, who's a senior circuit judge with his chambers in Pasadena, California. And we're very thankful to be sitting today with Judge Rainer Collins, who is a senior district judge in Tucson, Arizona. So we have submitted the first two cases on the calendar. And then the first case for argument is Fryer v. Kijakazi. And the attorneys are appearing by video. So, Mr. Janich. May it please the court. My name is Eitan Castle Janich and I am representing Vicky Fryer in this She loved her work. But she's been unable to work since July of 2017 due to the combined functional effects of her many physical and mental impairments, including diabetes with neuropathy, obesity, lumbar degenerative disease, fibromyalgia, adjustment disorder with mixed depression and anxiety, and somatic symptom disorder with predominant pain. The errors in this case require reversal and at least remand involve several different things. First of all, the ALJ erred by failing to properly evaluate the findings of an examining physician, Dr. Leinenbach. Dr. Leinenbach's opinion as far as Fryer's limitations was not that significant, but his findings were very significant. He found that she had 16 out of 18 fibromyalgia tender points. He found she had problems with her shoulder. And so the issue there is more that the ALJ failed to take into account the findings. His opinion itself, the ALJ also rejected that, but it wasn't a very significant opinion. The ALJ also erred. Oh, and I should mention that at that time, Fryer had not yet seen a rheumatologist, but so about a year and a half later, she did see a rheumatologist, Dr. McBurney. And she also noted clinical findings that confirmed that Fryer has fibromyalgia. The ALJ also erred by improperly rejecting the opinion of an examining psychologist, Dr. Littman. Dr. Littman opined that anxiety and she had limitations as a result of largely the result of her pain that was affecting everything about her. And he didn't think that she'd be able to return to work because she was so somatically focused on the many different kinds of pain. And it was obvious from observing her. He also noted she did have problems with, for example, she couldn't do threes or serial sevens. She had problems with some attention and concentration, which he thought was associated with her response to the pain. The file also contains medical evidence from a number of different physicians treating her for all of her different problems. None of those physicians stated an opinion about her specific limitations. But all of their findings, once again, support Fryer's testimony about how she is actually affected by all of these impairments. Then this leads to what was ultimately the most, the biggest error here is that ALJ improperly rejected Fryer's testimony. Her testimony is fully consistent with the clinical findings from all these physicians. Now, it's notable that with something like fibromyalgia, you can't, you can diagnose somebody with fibromyalgia by doing tender point tests, you can look at them and see how they look, you can prescribe medication, which was happened here, you can prescribe medication to attempt to treat the pain that they're complaining of. But you can't measure the pain. The pain is something that you can only ask the patient, what are you feeling? And they can describe the pain they're experiencing and how they're limited by that pain. And it's not just pain, but it's also a level of fatigue, it's a mental fog, there's a lot of different symptoms associated with fibromyalgia. But all of these symptoms can really only be determined, the severity of them by listening, asking the patient what symptoms they're experiencing and factoring that into your treatment plan. In this case, there is ample evidence, it's unquestionable that she's been diagnosed with fibromyalgia, and that she has a condition that can reasonably be expected to cause all of the symptoms she described. And the ALJ did not state any clear and convincing reason for rejecting any of her testimony about her symptoms. I thought he found that she didn't seek appropriate treatment, or that the treatment was very conservative regarding her fibromyalgia, which was inconsistent. There is no non-conservative treatment for fibromyalgia. And so the treatment she finally was able to start receiving, especially after she saw a rheumatologist, is medication. Medication is, it helps, but it doesn't necessarily, and certainly not in this case, doesn't not cure her, or may eliminate her pain. So there is, in light of the fact that there is no non-conservative treatment, an ALJ, it's not a convincing reason to reject a person's testimony about their fibromyalgia symptoms, based on the fact that they didn't get anything other than conservative treatment. And she did get treatment. I mean, she, you know, she got what she could. So that she was able to take medication, or some medication, not all. There was some, I think there was something in the record that she was, had a reaction to some of the medication. Yes. So now, Mr. Yonich, I thought I saw on the record that there, that there was some discussion of whether she could have had injections, that she didn't see a specialist, even though she'd been referred to a specialist. There was no recommendation for surgery. Those are all treatments that would be something beyond conservative treatment. Is that in the record? Or is there any, does that provide any support for the ALJ's decision? Well, there aren't injections that can treat fibromyalgia. There are injections that can treat her degenerative disc disease. I think that with the number of different problems she was having, the diabetic neuropathy affecting her ability to be on her feet and the pain in her hands and feet. There were so many different things going on with her here that I think that that was not a priority, perhaps, for her to try to get injections. And people do get leery about injections. You're right. They're not, on the one hand, they're considered, they can be considered conservative treatment. It's merely an injection, but there are people that don't want to get injections. So I don't really, I'm speaking in general terms here. I thought there was something in the record that one of the reasons why she didn't take, or she didn't receive all of her, the proposed or suggested epidurals was that she had to get her diabetes under control, or HC1 or whatever it was, whatever it is. Right. And the thing is, those injections can affect your diabetes. And so if your blood sugars are not under control, it can be a real problem to get injections. So I think that, I think you're right about that. So, Mr. Yonitz, you started with the argument that the ALJ's decision discounting her symptom testimony was not supported by substantial evidence because it wasn't inconsistent with the medical record, which in my view is the toughest argument for you because of Dr. Leinenbach's findings and his opinions on what her limitations would be. And her testimony about her limitations is nowhere near what he said. Also, Dr. Littman's opinion seems to me not to be supported. He just sort of opined that she had physical deconditioning. And then there were two non-examining physicians, Dr. Lilliland and Dr. Irwin, who also offered opinions on her limitations. And the ALJ cited and talked about all of this medical evidence. And so for me, it's difficult to reach the conclusion that the, even if we could interpret the medical evidence differently, that there's not substantial evidence to support the ALJ's conclusion that her testimony was not consistent with the medical findings. Well, her testimony, your Honor, I respectfully disagree. Her testimony, when you're looking at, when somebody has fibromyalgia, the way to determine what their ALJ rejected her testimony without... But the ALJ is not making a diagnosis. Dr. Leinenbach was, and he did examine her and listen to her. And then he made findings about what her limitations would be, which do not match what she said she could or couldn't do. Dr. Leinenbach's opinion about what her limitations are, are not findings. His findings are the fact she had tender points. His opinion about what her limitations are is a medical opinion from an examining source. And further evidence, additional evidence over the next couple of years showed that she had a lot of worsening of a lot of different medical conditions, all of which can reasonably be expected to cause pain. Dr. Leinenbach's one-time opinion at the some way preclude or conflict even with her testimony about the limitations she was experiencing. He did not apparently consider the limitations associated with fibromyalgia. He was just looking purely objectively at, well, what are the, because with fibromyalgia, you have to consider the person's testimony about their limitations. And he wasn't her treating position. Mr. Giannis, we've taken you over time and we didn't save any time for rebuttal. Would you like some time for rebuttal? I would please. Thank you. All right. We'll give you a minute. And then we have Mr. Burdett. Oh, I think you're muted. We can't hear you. I'm terribly sorry. Can you hear me now? Yes. Okay. Thank you, your honors. I'm David Burdett representing the commissioner, the acting commissioner, Dr. Khalil Kiyokazi in the matter. Mr. Giannis's main points here are similar to the brief. They are with regard to Dr. Leinenbach, Dr. Littman, and the claimant's testimony. We think the ALJ's findings with regard to all three are supported by substantial evidence and free of legal error. With regard to Dr. Leinenbach, as Judge Baird just pointed out, Dr. Leinenbach's findings did not match up with Ms. Fryer's later claimed limitations. In fact, I was a little bit confused as to the argument in the brief from Mr. Giannis because the ALJ actually adopted Dr. Leinenbach's findings with the exception of a finding about left shoulder overhead reaching, which was contradicted by one of Dr. Leinenbach's exam remarks. That's the way I understood the record as well, was that the ALJ actually did accept Leinenbach's diagnosis, or whatever it was, except with respect to the left shoulder. That's correct, Judge Pius. There really is no dispute then that she had these tender points. I think not. She is diagnosed with fibromyalgia. Correct. Correct. That is correct. That was my understanding of the record as well. Yes, there is no dispute that she had fibromyalgia. I know where you're headed, or I think where you're going to go, and this is what concerned me about this case. She testifies about the excessive pain. Our case law is pretty clear that you can't reject excessive pain just on the basis of the absence of medical evidence, right? I mean, she's testifying subjectively. That was what her whole story was, that she has this excessive pain. You're right, Your Honor. As you know, because you've seen a bunch of these cases, the whole issue of subjective pain is one that kind of bedevils social security law, because how is one to know? The ALJ has to make an evaluation based on the record as a whole, but you're also right that the ALJ can't just say, well, I don't believe you because it's not supported by substantial evidence. But here, the ALJ did not. The ALJ actually has five reasons in the record, and as we know that in the administrative decision that he cites, and as we know from this court's decision all the way back in Batson versus Barnhart, Batson versus the commissioner, if one of those reasons is a clear and convincing reason supported by substantial evidence, that's enough. A reviewing court has to affirm the ALJ's finding as to the subjective symptom testimony. And I would be happy to go into those. I would appreciate it if you would, especially with respect to the medication and the activities and whatnot. Yeah. One of them, as you indicated, was the minimal treatment, and we had some colloquy about that with Mr. Janice at the argument, but that is one. Another one is the fact that she had longstanding similar limitations. She had previously been diagnosed with fibromyalgia, and sciatica from at least 2016, which is prior to the alleged period of disability, and diabetes from her late 30s, which was approximately 15 years before, almost 15 years before. And this is not a case, by the way, where she's claiming disability just on the basis of fibromyalgia. Fibromyalgia, diabetic neuropathy, and disc issues. All right, so it's not solely fibro, and really her fibromyalgia and really her complaints are not primarily, their alleged limitations are not primarily due to fibromyalgia. And so I wanted to get out the fact that she had the longstanding limitations there. She had all of those limitations as the ALJ cited. Another one is inconsistent symptom reports. And as we know from many cases from this court, if an ALJ cites inconsistent reports of symptoms, that will suffice to discount a claimant's testimony as to his or her subjective symptoms. For example, at transcript 240, she says, I have headaches twice a week, but she told her treating provider at transcript 423 that she had headaches once every two months. There was a complaint that her shoulder limitations were disabling, but she rarely complained of shoulder pain in all the records that the ALJ canvassed. Similarly, her alleged hand problems. All right. So that was, let me see. One, two, three. Let me interrupt you for a second. Didn't the doctor say that he found limitations in her shoulder, but she never complained about it? And that was one of the reasons ALJ gave? Yes, your honor. But the doctor certainly made the finding there was something wrong with her shoulder. There was something wrong with her shoulder, but yeah, you're correct, your honor. There was something wrong with her shoulder, but the doctor also noted, Dr. Leidenbach noted that she had full range of motion in her shoulder. So the ALJ recently found that that wasn't going to be a disabling impairment. And that's it. Where is that? That's the transcript to page 424. And I want to talk about the activities of daily living. And I think that was a subject of interest to Judge Paez. She stated that she could walk only a block in the fall of 2017. That was near the beginning of the alleged onset date. That's in transcript 193. But that was months before she reported that she was going on walks of 45 to 60 minutes, three times a week at transcript 503. So that can't be right. Or if it was right at the time, then she's getting better and not worse throughout the alleged period of disability. And then finally, it was the fifth reason, 1, 2, 3, 4, 5 reasons that the ALJ provided to doubt her subjective symptom complaints was that it was inconsistent with the objective medical evidence, which as Judge Paez noted, cannot stand on its own. But it can certainly be cited. And in fact, the ALJ has the duty, the duty under the regulations to address whether or not a claimant's symptoms are consistent with the objective medical evidence. So those are five reasons that the ALJ cited. And I believe that they're supported by substantial evidence that a reasonable mind could have found that her subjective symptom testimony just doesn't match up with the case. So I really don't think there's a way that this court can find that the finding as to the subjective symptom testimony was not supported by substantial evidence. Now, in the brief time that we have, I should stop there. Is that responsive, Judge Paez? Thank you very much. I appreciate the review. Okay. They're always complex. They are. They are. And it's hard to kind of, it's hard to boil them down to modules, as I like to say, that one can get out in a very limited amount of time. With regard to Dr. Leinenbach and Dr. Lippmann, and I think this was surfaced in the questioning in the earlier part of the argument, so I don't want to linger on it too much, but I have to address it. I think we already talked about the fact that Dr. Leinenbach's opinion doesn't match up with Ms. Fryer's claims. So that offers no support at all for her theory that she is disabled. Dr. Lippmann's opinion, similarly, doesn't really support her claim. And Dr. Lippmann, who is the ALJ noted as a psychologist, said that, you know, I would tend to believe her. That's a quote from the record, by the way. This examiner would tend to believe her, quote unquote, as she presented fairly physically deconditioned. It is not clear as to the level of success she might have with exposure to some physical reconditioning as she seems wary and pain avoidant. You know, that is just not a slam dunk case for disability, even if credited. And it's the assertion of a psychologist who is opining on matters that are really outside of his expertise. So I don't think that that either supports a theory that Ms. Fryer is disabled by her physical limitations. Judge Bain cited the prior administrative findings of Dr. Lululand and Dr. Irwin. Those were the state agency reviewing physicians. And I think that the ALJ in his decision goes along with what Lululand and Irwin said with regard to his residual functional capacity finding. So we think that everything the ALJ said was supported by substantial evidence, free of legal error. And we would respectfully request that the court affirm the case. All right. Thank you. And Mr. Janich, we'll put a minute on the clock for you. Please go ahead. Thank you. First, I'd just like to mention Dr. Leinebach's opinion, once again, is not objective evidence. It is a subjective opinion by an examining physician. And with regard to the fact that Fryer's had these many different impairments for a number of years, it's not impairments that are disabling. It's the limitations. It's the limitations caused by the impairments that can be disabling. And in this case, her impairments got worse over time, as often happens with things like diabetes or things that are progressive. And the combination of her impairments and all of the limitations from all of those impairments prevented her from being on her feet for an eight-hour day. And that's why she can't do light work. And that's why she should be found disabled. Because at her age, with her job experience, being limited to sedentary work means the ALJ was required to find her disabled. There is no substantial evidence to support a finding that she could be on her feet for a full eight-hour day. Thank you. Thank you, Mr. Janich. Counsel, thank you both for your arguments. They were very helpful. And this case is under submission.
judges: PAEZ, BADE, Collins